

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**Black Apple iPhone<br>Seized as FP&F No.2021565400003101 Item 002<br>("Target Device")** | )<br>)<br>)  Case No. **21-MJ-1036**<br>)<br>) |

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Transportation Of Illegal Aliens (a)(1)(A)(ii) |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Wesley Cornue, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Wesley Cornue, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date: __03/18/2021__

*Judge's signature*

City and state: San Diego, California         HON. LINDA LOPEZ, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Wesley Cornue, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Black Apple iPhone
> Seized as FP&F No. 2021565400003101 Item 002
> ("Target Device")

the ("**Target Device**"), as further described in Attachment A to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant(s) relate to the investigation and prosecution of Mauro GONZALEZ-Frausto for attempting to transport and move illegal aliens within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2007, and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal

1

Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for twelve years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities,

including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as

3

emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

 a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

 b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

 c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

 d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

 e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

 f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On March 16, 2021, Border Patrol Agent L. Gutierrez was conducting assigned duties in the Brownfield Station's area of responsibility near the State Route (SR) 94 Border Patrol Immigration Checkpoint in Jamul, California. Agent Gutierrez was in full rough duty uniform with all agency patches and insignias fully displayed and visible.

12. At approximately 1:10 PM, Supervisory Border Patrol Agent J. Hilsenroth, advised via service agency radio, that there was a request from Chula Vista Station, for a uniformed agent in a fully marked agency vehicle to intercept a Silver Dodge Ram that was a possible load vehicle driving east on SR 94.

13. After a few minutes of hearing the request, Agent Gutierrez observed the Dodge Ram driving west of the intersection of Otay Lakes Road and SR 94. Agent Gutierrez initiated a vehicle stop and activated lights and siren's and the Dodge Ram came to a stop near the intersection of Honey Springs Road and SR 94. Agent Gutierrez approached the driver's side door, and the driver, later identified as the defendant, Mauro GONZALEZ-Frausto, handed Agent Gutierrez the keys, without being asked to do so. Agent Gutierrez also observed there was multiple individuals laying down on the floorboard, back seat and in the bed of the Dodge Ram, attempting to conceal themselves. Also, at this time Border Patrol Agent E. Limon from the Chula Vista Station arrived in the location of the stop and approached the individuals in the bed of the Dodge Ram. Agent Limon identified himself, as a Border Patrol Agent and conducted and immigration inspection. All three Material Witnesses, Santiago BANUELOS-Chino, Laurencio MEDINA-Flores and Marcos PENA-Juares, stated that they were citizens of Mexico without proper documents allowing them to enter or remain in the United States legally. At approximately 1:23 PM, Agent Limon placed all the individuals, including BANUELOS, MEDINA and PENA, under arrest for being illegally present in the United States.

14. At this time, Agent Limon advised Agent Gutierrez that he had arrested the individuals in the bed of the Dodge Ram. Agent Gutierrez questioned GONZALEZ, as to his citizenship. GONZALEZ presented a Mexican passport booklet and self-admitted to Agent Gutierrez that he was a citizen of Mexico born in the state of Jalisco, and that he was also present in the United States illegally. Without being asked any further questions, GONZALEZ, also stated in the Spanish language, "I'm sorry. I had to do this to pay off my debt." At approximately 1:25 PM, Agent Gutierrez placed, GONZALEZ under arrest for Transportation and Smug gling of Illegals, and for being present in the United States illegally.

15. During an inventory search of the vehicle a Black Apple iPhone (**Target Device**), was discovered in the center console of the vehicle. GONZALEZ-Frausto later claimed ownership of the Black Apple iPhone (**Target Device**).

16. At the station GONZALEZ stated that he illegally entered the United States approximately a week prior to this arrest. GONZALEZ had a smuggling arrangement for himself wherein he agreed to pay the sum of $8,500.00 US Dollars. He went on to say that he was kept at a stash house and then at a local park for several days. Further, being that he did not have the $8,500.00 US Dollars, he was told that he would have to pick up another group of illegal aliens in order to pay off the debt.

17. GONZALEZ stated that, while at the park, he was approached by two males he recognized from the stash house. These two males provided him with the Dodge Ram truck that was used in this event. GONZALEZ stated he did as instructed and picked up the group of illegal aliens.

18. Material Witnesses BANUELOS, MEDINA and PENA, admitted to being citizens of Mexico, illegally present in the United States and not having any documents that would allow them to enter or remain in the United States legally. BANUELOS, MEDINA and PENA admitted to having smuggling arrangements wherein they agreed to

pay between $8,000.00US Dollars to $9,000.00US Dollars. The material witnesses were instructed to be on the look out for a gray truck. BANUELOS stated that once the vehicle approached their location he heard the driver yell out in Spanish, "let's go, let's go." BANUELOS was unable to identify the driver. MEDINA stated that once in the truck, he was instructed by the driver to lay down and hide in the back seat. MEDINA was unable to identify the driver. PENA stated that when the vehicle arrived at approximately 2:00 P.M., the group ran toward it. Further, that he sat behind the front passenger seat. PENA went on to say that he heard the driver state that they had been caught. PENA was unable to identify the driver.

19. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Device** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on February 16, 2021 through March 16, 2021.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

7

personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

8

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

23. Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owners' consent. Consent was not given.

## CONCLUSION

24. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

25. Because the **Target Device** was seized at the time of GONZALEZ'S arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from **February 16, 2021 through March 16, 2021**.

26. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachment(s) A, and seize the item listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Wesley Cornue
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of March, 2021.

HON. LINDA LOPEZ
United States Magistrate Judge

9

# **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

Black Apple iPhone
Seized as FP&F No. 2021565400003101  Item 002
("Target Device")

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT B

ITEM TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A, and includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **February 16, 2021 through March 16, 2021**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.